# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

CARIBBEAN   SEASIDE   HEIGHTS
PROPERTIES, INC.,

      Plaintiff,

           v.                          **Civil No. 13-1393 (SEC)**

ERIKON LLC ET AL.,

      Defendant.

# OPINION & ORDER

Previously, the Court issued a Memorandum & Order denying the parties' cross-motions for summary judgment without prejudice and ordering them to file supplemental briefs on the issue identified therein. See Docket # 78. After reviewing the parties' supplemental briefs, and after carefully parsing the applicable law, the Court finds that the Release executed by Plaintiff is valid under Puerto Rico law and bars this suit. For ease of reading, the Court shall reiterate the factual and procedural background of this case below with relevant updates.

## I.    Background

Defendant Erikon LLC (Erikon) was the optionee of an agreement to purchase several parcels of land in Aguadilla, Puerto Rico, belonging to the Estate of Pedro Almeyda, for the development of the Cristopher Columbus Landing Project (the Project).[1] Since Erikon lacked the necessary funds to exercise the option, it entered into a complex agreement in January 1998 with Plaintiff Caribbean Seaside Heights

---

[1] Koeniger Development, Inc. (Koeniger Inc.) was also an optionee to the agreement.  Koeniger Inc. and Erick Koeniger (President and principal stockholder of both Erikon and Koeniger Inc.) were named as codefendants to this action, but Plaintiff never executed the summons and later voluntarily dismissed its claims against them. See Docket # 30.

Properties, Inc. (Seaside) and Pedro Almeyda's Estate titled *Assignment of Right to Option, Sale, Mortgage and Option Agreement Subject to Execution Clause*. Docket # 66-1. Pursuant to the terms of the agreement, Erikon assigned its option to Seaside, which simultaneously purchased the properties, and granted Erikon an option to repurchase the property on or before December 1, 1998. In addition, Seaside reserved the right to decline payment and become 50% partner with Erikon, in which case, most of the expenses incurred in the Project would be distributed equally between both parties. Docket #63, ¶ 4. While Seaside chose the latter option, Erikon allegedly never covered its share of expenses in the Project.

On April 2006, Seaside (as Seller) and Erikon (as Seller's Creditor) executed a private agreement to sell the property and other considerations related to the development of the Project to Caribbean Management Group, Inc. (Caribbean) for the purchase price of $24,000,000.00. Docket # 66-2. The architect of the Project, Evelino Pina (Pina) was apparently discontent with the sale and on June 2006, filed a complaint against Erikon and Seaside, among others, for breach of contract and damages in relation to the Project's development. See Evelino Pina-Pérez v. David Wishinsky et al., Civ. No. 06-1661 (JAG). As a result, on December 30, 2006, the parties executed an amendment to the sale agreement (the 2006 Amendment) "as a temporary solution from [Caribbean] to continue and conclude the Purchase/Sale Agreement," Docket # 66-3, at 4, by which the purchase price was reduced and the payment schedule was modified and conditioned upon the execution of certain releases and other considerations, some of which pertained to Pina's claim. For instance, Seaside would furnish a release from Pina for any claims the latter had against Seaside. See id. at 3. Erikon, on the other hand, would place $250,000 in an escrow account to satisfy a potential judgment in favor of Pina and agreed to pay for certain legal fees associated with the Project. Id. at 3-4.

The 2006 Amendment also provided that Seaside and Erikon would execute releases in favor of Caribbean and mutual releases in favor of each other. Id. at 5. At

some point in December 2006, Seaside executed a release in favor of Erikon which reads, verbatim:

> David Wishinksy Kerr and Caribbean Seaside Heights Properties, Inc., former and future owners, officers, stockholders, managers, partners, employees, representatives, agents and affiliates, hereby remises, waives, releases and forever discharges and save and hold harmless, Erich Koeniger, Erikon, LLC, Koeniger Development, Inc., and each of its existing, former and future stockholders, owners, officers, directors, managers, employees, representatives, agents and affiliates (collectively "Releasees"), of and from any and all claims, actions, charges, suits, debts, liabilities, contracts, agreements and promises, of any kind or nature whatsoever, which David Wishinksy Kerr and Caribbean Seaside Heights Properties, Inc. may have or assert against any of them and or any claims, actions charges, suits, debts, liabilities, contracts, agreements and promises any kind or nature whatsoever between any of its stockholders, owners, officers, managers, partners, employees, representatives, agents and affiliates, arising out of or relating to Christopher Columbus Landing Project in Aguadilla Puerto Rico; Furthermore, David Wishinksy Kerr and Caribbean Seaside Heights Properties, Inc. further promise never to institute any claim, action, charge or suit, of any kind or nature whatsoever, against any of the Releasees which arises from or relates to Christopher Columbus Landing Project in Aguadilla Puerto Rico or any other event or action which occurred before or after the date of execution of this Release and represent and warrant that they have not assigned or transferred any portion of any such claim, action, charge or suit.

Docket # 66, ¶ 9. The record, however, does not reveal that Erikon executed a release in favor of Seaside as agreed in the Amendment.

Approximately six years after the 2006 Amendment and execution of the release, Seaside for the first time attempted to recover Erikon's share of the expenses incurred in the development of the Project. After Erikon refused, Seaside filed this diversity action for breach of contract and damages. Docket # 1. In general terms,

Plaintiff claims that Erikon owes it $3,572,029.84 in alleged expenses related to the Project. Docket # 20, ¶ 18.

In the Case Management Memorandum, Seaside argued that it could be subject to certain tax liabilities pursuant section 1092.01(a) of the Puerto Rico Internal Revenue Code due to alleged false representations from Erikon. Docket # 40, at 5. In the Case Management and Settlement Conference, the Court noted that "the parties' position, especially [P]laintiff's was unclear" and ordered the parties to exchange information regarding any potential tax liability. Docket # 50. Thereafter, Seaside's counsel resigned, and its new counsel withdrew Seaside's allegations regarding potential tax liabilities. See Docket # 58.

In due course, Seaside filed a motion for summary judgment arguing that there is no genuine issue of material fact as to Erikon's obligation to pay 50% of the expenses incurred in developing the Project. Docket # 63. Erikon did not oppose Plaintiff's motion, but filed a cross-motion for summary judgment based on a Release that Seaside executed waiving all claims related to the Project. Docket # 65.

## II.    Analysis

In its previous Memorandum & Order, the Court ruled that the terms of the Release executed by Plaintiff were clear and unambiguous. The Court also ruled that if the Release was valid, it would bar this suit. Nevertheless, the parties' submissions did not place the Court in a position to rule on the validity of the Release. While Seaside argued that the Release was invalid for lack of consideration under Puerto Rico law, it supported its argument with caselaw dealing with contractual principles of common law.[2] The Court thus ordered Plaintiff to file a supplemental brief in support of its

---

[2] Under Puerto Rico law, three elements must concur for there to be a valid and binding contract; in Spanish, these are "objeto, consentimiento y causa." S.J. Credit, Inc. v. Ramirez, 113 D.P.R. 181 (1982) (emphasis added). Under the English version of the Puerto Rico Civil Code, however, these three elements are translated as "object, consent and consideration." See e.g, U.S. Fid. & Guar. Co. v. Maldonado-Lopez, Civ. No. 11-1179 (SEC), 2012 WL 262730, at *4 (D.P.R. Jan. 30, 2012) (emphasis added). Yet it is quite settled that the notion of "consideration" in the Common Law is not analogous to the Civil Law concept of "causa." This translation has had the unfortunate effect of promoting, at least in this respect, the miscegenation of Puerto Rico's Civil Law system with that of the Common Law. Id.; see generally Jose Trias–Monge, El choque de dos culturas juridicas en Puerto Rico (1991); Trias Monge, La crisis del derecho en Puerto Rico, 49 Rev.Jur. U.P.R. 1 (1980). If

argument that the Release is void for lack of consideration under Puerto Rico contract law. The Court also ordered Defendant to supplement its argument with applicable caselaw regarding "releases or waiver agreements" under Puerto Rico law. For the reasons stated below, the Court finds that Seaside's Release is valid and enforceable, and therefore bars this suit.

      a. <u>The Release is not void for lack of consideration</u>

Through the 2006 Amendment, the four contracting parties made substantial changes to the deed of sale they had executed earlier that year.[3] These included alterations to the purchase price and the terms of payment, the inclusion of a guarantee, and provisions relating to commissions for the sale of the property. They also incorporated a section entitled "Releases," which spelled out the details for various releases of liability between the parties. At issue in this case is the last sentence of that section, through which Erikon and Seaside promised to "execute mutual releases in favor of each other." <u>See</u> Docket # 66-3 at p. 4.

Seaside's argument centers on the fact that Erikon never actually executed the release in favor of Seaside. Seaside thus maintains that its own Release should be voided for lack of consideration. <u>See</u> Docket # 79, p. 3 ("Insofar [Erikon] did not

---

prudence and comity counsel a federal court sitting in diversity against charting "new and different" courses in state law, <u>Rared Manchester NH, LLC v. Rite Aid of New Hampshire, Inc.</u>, 693 F.3d 48, 54 (1st Cir. 2012), then they also compel federal courts to safeguard state law from erroneous interpretation. <u>See</u> <u>Díaz v. Gonzalez</u>, 261 U.S. 102, 105-06 (1923) (Holmes, J.) (cautioning federal courts against reassembling Puerto Rico law "according to common law conceptions."). Across the years, much ink has been spilled in an attempt to clarify these concepts and their differences – the content of which is sometimes surprisingly acrimonious in nature. <u>See</u> Tratado de Contratos, Tomo I, p. 599 (Tirant lo Blanch ed., 2009; ISBN 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-499-4); Ernest Lorenzen, Causa and Consideration in the Law of Contracts, 28 Yale L.J. 621, 624–25 (1919); B. S. Markesinis, Cause and Consideration: A Study in Parallel, 37 C.L.J. 1, pp. 53-75 (1978). While the resolution of this case does not require the Court to plumb the depths of these doctrinal differences, it provides an opportunity to remind the legal community that such differences indeed exist and in some cases may be dispositive. <u>See</u> <u>e.g.</u> <u>CABI Corp. v. Puerto Rico Am. Ins. Co. (PRAICO)</u>, No. KAC2003-1458(901), 2010 WL 2985720, at *6 (P.R. Cir. Feb. 27, 2010) (noting that it is a "grave error" to confuse the concepts of "causa" and "consideration," and holding that the difference was material to the issue before the court). For further reading on this issue, a good place to start is with Guaroa Velazquez, La Consideracion, la Causa, y el Derecho Puertorriqueño, Revista del Colegio de Abogados de Puerto Rico, Vol. XVI, No. 2 (Feb. 1956); and J. Puig–Brutau, Doctrina General del Contrato, Barcelona, Ed. Bosch, S.A., 1978, T. II, Vol I, pp. 124-127. Subject to the above as a caveat, the Court shall use the official English translation of "causa" – i.e. "consideration" – throughout this Opinion.

[3] The parties to the 2006 Amendment were Seaside, Erikon, Koeniger and Caribbean Management Group, Inc.

execute a release in [Seaside's] favor and, consequently, never delivered such release, there is no consideration and, therefore, [Seaside's] release is null, void and has no effect… .").

This argument is fundamentally flawed. Under Puerto Rico law, a "contract exists from the moment one or more persons consent to bind himself or themselves[.]" Article 1206 of the Civil Code, P.R. Laws Ann. tit. 31, § 3371. It is at that moment that the existence of consent, object <u>and</u> consideration – the three essential elements of a contract – must concur. See <u>S.J. Credit, Inc. v. Ramírez</u>, 113 D.P.R. 181 (1982); <u>Rivera Esparra v. Merheb</u>, 2010 WL 2885654, at *2 (P.R. Cir. Apr. 21, 2010) ("The existence of these [three] elements is determined at the time the contract is perfected.") (translation supplied); <u>see</u> <u>also</u> Article 1210 of the Civil Code, P.R. Laws Ann. t. 31, § 3375 ("Contracts are perfected by mere consent, and from that time they are binding[.]"). On the other hand, a party's failure to comply with its obligations under a contract does not mean that the contract is null for lack of consideration. <u>See</u> J. Puig–Brutau, Doctrina General del Contrato, Barcelona, Ed. Bosch, S.A., 1978, T. II, Vol. I, pp. 142-143. Instead, the aggrieved party may seek damages, specific performance of the obligation, and in certain circumstances not present here, the resolution of the contract. <u>Id.</u>; <u>see</u> <u>also</u> <u>Master Concrete Corp. v. Fraya, S.E.</u>, 152 D.P.R. 616 (2000).

With these basic principles laid out, the flaw in Seaside's argument becomes clear: even if Erikon had breached its obligation to execute a Release in favor of Seaside, this failure would perhaps entitle Seaside to sue for specific performance and damages, but not to nullify the 2006 Amendment for lack of consideration, thus permitting it to rescind the Release.

In any event, the Court finds that the 2006 Amendment contained valid and sufficient consideration. To begin, because Puerto Rico law presumes that every contract has valid consideration, Seaside has the burden of showing otherwise. <u>See</u> P.R. Laws Ann. tit. 31, § 3434. Consideration, in bilateral obligations, is understood as "the prestation or promise of a thing or services by the other party." P.R. Laws Ann. tit.

31, § 3431. The Supreme Court of Puerto Rico explained long ago that the element of "consideration," for purposes of determining the existence of a contract, is considered to be

> the benefit or benefits which one party receives from the other, or the latter obligates himself to confer upon the former, and to which he had previously no right; or also, the damages which one party suffers because of the other, and which he was not obliged to suffer, <u>the existence of the said benefits or damages being the reason which caused the other party to obligate himself</u>.

<u>Adria Int'l Grp., Inc. v. Ferre Dev., Inc.</u>, 241 F.3d 103, 107 (1st Cir. 2001) (quoting <u>Guerra v. Treasurer</u>, 8 P.R.R. 280 (1905)) (emphasis added).

In the 2006 Amendment, Seaside and Erikon each assumed a reciprocal obligation to execute a release in favor of the other. This type of obligation – which is sometimes referred to as a bilateral or synallagmatic obligation – "has, as its consideration, <u>the promise offered in exchange</u>." <u>United States v. Pérez</u>, 528 F.Supp. 206, 209 (D.P.R. 1981) (citing <u>Del Toro v. Blasini</u>, 96 D.P.R. 662 (1968)) (emphasis added). That is to say, the contract contains a valid consideration if the reciprocal obligation "yields either a benefit or a detriment to each party." <u>Adria</u>, 241 F.3d 103, 107 (quoting <u>United States v. Pérez</u>, 528 F. Supp. 206, 209 (D.P.R. 1981)) (citations omitted); <u>cf.</u> <u>Soto v. State Indus. Prods., Inc.</u>, 642 F.3d 67, 76–78 (1st Cir. 2011) (holding that a bilateral obligation to arbitrate constitutes sufficient consideration under Puerto Rico law).

Here, there is no question that the parties' mutual promise to execute a release in favor of the other constitutes valid and sufficient consideration. This promise was "detrimental" in the sense that it required each party to release the other of liability arising out of, or relating to, the Project. Further, due to the reciprocal nature of the obligation, the detriment to each party accrued to the benefit of the other. <u>See</u> <u>In re Las Colinas, Inc.</u>, 294 F.Supp. 582, 596 (D.P.R. 1968) ("Any detriment to the opposite party is a valuable consideration.") vacated and remanded on other grounds, 426 F.2d

1005 (1st Cir. 1970). Thus, even with respect to this obligation alone, the 2006 Agreement contained sufficient consideration, regardless of whether Erickon would later follow through with its promise.[4] See Adria, 241 F.3d 103, 107 (1st Cir. 2001) (holding that a good-faith promise to pay an additional amount towards the purchase price of a commercial property in exchange for a two-week extension of the purchase option was valid consideration regardless of whether the party later breached that promise).

In light of the above, Seaside has failed to shoulder its burden of proving lack of consideration. The Court therefore holds that Seaside's Release, issued pursuant to the 2006 Amendment, is binding and bars this action.

b. Seaside waived its defense under Article 1077 of the Puerto Rico Civil Code and the doctrine of *exceptio non adimpleti contractus*

In its supplemental brief, Seaside also argues that the Release should also be declared null and void pursuant to the doctrine of *exceptio non adimpleti contractus*, as enshrined in Article 1077 of the Civil Code. Yet Seaside never mentioned this argument in its opposition to Defendant's motion for summary judgment nor in its own motion for summary judgment. The Court's previous Memorandum only ordered the parties to clear up some issues concerning the arguments they had laid out in their respective motions. In so doing, the Court did not open the door for Plaintiff to bring this argument now, and so it is waived.

Regardless of whether Seaside waived the argument as a procedural matter, it also waived it for failure "to spell out its arguments squarely and distinctly." Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988). The Court briefly explains this point below.

---

[4] Of course, it could also be argued that the 2006 Amendment contained sufficient consideration that is independent of the clause at issue here. As mentioned above, there were multiple "prestations" by the parties, all geared towards facilitating the sale of the Christopher Columbus Landing Project. It is certainly plausible that Seaside gave its consent to join the 2006 Amendment in exchange for these concessions, and that therefore there was sufficient consideration.

When a party to an agreement does not comply with its obligation, Article 1077 of the Civil Code "grants the aggrieved party the right to choose between fulfillment of the obligation or rescission of the same, and to seek damages and interest in both cases." Ramírez v. Club Cala de Palmas, 23 P.R. Offic. Trans. 311 (1989) (citing P.R. Laws Ann. tit 31, § 3052). The Puerto Rico Supreme Court has tempered the scope of this provision, ruling that "not every failure to comply with a mutual obligation will have the effect of terminating the contract." Id. "For this to be the case, the unmet obligation must be an essential obligation or fulfillment of the obligation must constitute the motive that induced the other party to enter into the contract." Id. In short, "Article 1077 is a remedy of last resort, reserved for situations in which a party's breach dissipates the very essence of a contract." Dopp v. Pritzker, 38 F.3d 1239, 1244 (1st Cir. 1994).

Beyond claiming that Erikon did not keep its end of the bargain, Seaside does not explain why it is entitled to such a drastic remedy. For instance, Seaside does not discuss whether Erikon's omission constituted a breach of an essential element of the contract, which is a sine qua non requirement for the application of the doctrine. On the other hand, even assuming the doubtful proposition that the "very essence" of the contract lay within the parties' exchange of mutual releases,[5] there is zero evidence that Erikon's failure to execute a release had any tangible effect upon Seaside. Erikon flatly states that it has not initiated nor pursued any claim against Seaside since the execution of the 2006 Amendment, and Seaside does not dispute this point.[6] As a

---

[5] See note 7, supra.

[6] Erikon argues that the Release it executed in favor of Caribbean Management Group "should be interpreted as binding between [Seaside] and Erikon." Docket # 65, at 9. Erikon posits that under these circumstances, there are "sufficient causes to authorize a period for correction" under Article 1077. P.R. Laws Ann. t. 31 § 3052 ("The court shall order the rescission demanded, unless there are sufficient causes authorizing it to fix a period."); Neca Mortgage Corp. v. A & W Dev. S.E., 1995 P.R.-Eng. 905,586, P.R. Offic. Trans. ("The courts must be well aware that Civil Code sec. 1077 provides that the court will order the rescission unless there are sufficient reasons authorizing it to fix a period."). Indeed, the 2006 Agreement did not set any deadlines for the execution of the mutual releases in question. But given Plaintiff's perfunctory treatment of its Article 1077 argument and its failure to respond to Defendant's contention, the Court finds no need to fix such a period here.

result, it is impossible to see how Erikon's omission "dissipated the essence" of the contract such that Seaside would be entitled to rescind its Release.

"It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). By failing to discuss these critical points, Seaside waived this argument.

### III.    Conclusion

For the reasons stated above, the Court finds that the Release executed by Seaside is valid and enforceable by Erikon as a defense against this action. Judgment shall therefore follow dismissing this case with prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of July, 2016.

_s/ Salvador E. Casellas_
SALVADOR E. CASELLAS
U.S. Senior District Judge